IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH P., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:24-cv-367-SMD |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| *Commissioner of Social Security*, | ) |
| | ) |
|    Defendant. | ) |

## **OPINION & ORDER**

Plaintiff Joseph P. ("Plaintiff") filed for a period of disability and disability insurance benefits ("DIB") on August 1, 2021, alleging he became unable to work beginning May 12, 2021. Tr. 17. Plaintiff's application was denied at the initial administrative level, as well as on reconsideration. Tr. 133-156. He then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Plaintiff was disabled from May 12, 2021, through January 25, 2023 (the "Closed Period"), but not disabled beginning January 26, 2023, because he experienced medical improvement. Tr. 39. The ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") after the Social Security Appeals Council (the "Appeals Council") declined review. Tr. 1; *see Chester v. Bowen*, 792 F.2d 129, 131

---

[1] Frank Bisignano, the Commissioner of the Social Security Administration, is substituted for Carolyn W. Colvin as Defendant in his official capacity in this action. *See* FED. R. CIV. P. 25(d)(1).

(11th Cir. 1986). Plaintiff now appeals that final decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.[2]

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 16); Comm'r Consent (Doc. 15).

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213

---

[4] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

(11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). Further, reviewing courts are required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III.     ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty-seven years old on his alleged onset date. Tr. 240. He completed one year of college and has previous work experience as an industrial cleaner and in retail. Tr. 31, 265. Plaintiff alleges disability based on blind or low vision, depression, and schizophrenia. Tr. 264.

In the administrative proceedings before the Commissioner, the ALJ made the following findings with respect to the five-step evaluation process for Plaintiff's disability

determination. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 21. At step two, the ALJ found that Plaintiff suffered from the following severe impairments during the Closed Period: peripapillary atrophy, high myopia, amblyopia, recurrent major depressive disorder, bipolar disorder, and agoraphobia with panic disorder. *Id.* At step three, the ALJ found that Plaintiff has not had an impairment or combination of impairments that medically equals the severity of the listed impairments during the Closed Period. *Id.* at 22.

The ALJ proceeded to determine Plaintiff's RFC, finding that Plaintiff could "perform a full range of work at all exertional levels" but with additional exertional and non-exertional limitations. Tr. 24. Notably, the ALJ found that Plaintiff "was expected to be absent from work more than one day per month as a result of his symptoms, which were less controlled during the [C]losed [P]eriod." Tr. 24. At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 31. At step five, the ALJ found that, during the Closed Period, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id.* Accordingly, the ALJ found Plaintiff disabled during the Closed Period. Tr. 32.

Following the finding of disability during the Closed Period, the ALJ examined whether Plaintiff's disability continued. Tr. 31. The ALJ reached the same conclusions at steps one, two, and three for the period beginning January 26, 2023, as she did for the Closed Period. Tr. 32. However, the ALJ found that, beginning January 26, 2023, Plaintiff had experienced medical improvement such that his RFC had increased. Tr. 34-35.

Accordingly, the ALJ formulated a new RFC, finding that Plaintiff would no longer be absent from work more than one day per month because of his symptoms, without making any other changes to the Closed Period RFC. Tr. 35. The ALJ found at step four that Plaintiff still lacked past relevant work experience, Tr. 37, but at step five, found there have been jobs that exist in significant numbers in the national economy that Plaintiff could perform under his new RFC, including jobs as a marker, router, and housekeeper/cleaner, Tr. 38. Accordingly, the ALJ found Plaintiff was not disabled beginning January 26, 2023. Tr. 39.

IV. **PLAINTIFF'S ARGUMENTS**

Plaintiff presents three issues for the Court's review:

1) Whether the ALJ failed to properly evaluate the medical opinion evidence and failed to properly determine Plaintiff's mental RFC beginning January 26, 2023;

2) Whether the ALJ failed to properly evaluate Plaintiff's subjective statements;

3) Whether the ALJ relied on a flawed hypothetical question to the VE.

V. **ANALYSIS**

**A. Whether the ALJ failed to properly evaluate the medical opinion evidence and determine Plaintiff's mental RFC beginning January 26, 2023.**

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence from his treating psychiatrist, Dr. Strunk. Pl.'s Br. (Doc. 7) pp. 3-8. Dr. Strunk opined in October 2023 that, for one-third of an eight-hour workday, Plaintiff could interact appropriately with the general public, get along with co-workers and peers, and respond appropriately to supervision. Tr. 483. He further opined that Plaintiff had "no ability" to

6

respond to customary work pressures or changes in the work setting. Tr. 483. Dr. Strunk based this opinion on evidence of Plaintiff's mental instability with exacerbations of illness. Tr. 483.

In evaluating Dr. Strunk's opinion, the ALJ concluded that the opinion was unpersuasive because it was inconsistent with treatment records that reflected improvement of Plaintiff's symptoms and only "mild" impact to his life, work, and activities. Tr. 37. Plaintiff argues that the ALJ's analysis is insufficient considering that there "is no analysis whatsoever" regarding the supportability of Dr. Strunk's opinion and minimal analysis regarding its consistency with the record. Pl.'s Br. (Doc. 7) pp. 3-8. Further, as to the ALJ's consistency analysis, Plaintiff contends that the record does not support the ALJ's conclusion that Plaintiff experienced medical improvement, thus limiting his disability benefits to the Closed Period. *Id*. at 5-8.

### 1. Evaluation of Dr. Strunk's Medical Opinion

In evaluating the persuasiveness of a medical opinion, an ALJ is required to consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). Because supportability and consistency are the "most important" factors considered, an ALJ must articulate how he considered these factors for a medical source's opinion.[6] *See Simon v.*

---

[6] For supportability, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. § 404.1520c(c)(1).

*Kijakazi*, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021); 20 C.F.R. § 404.1520c(a)-(c). An ALJ may—but is not required to—explain how he considered the other remaining factors. *Nix v. Saul*, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(b)(2)).

The Social Security Regulations provide that a "medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion." 82 F. Reg. 5844, 5845 (Jan. 18, 2017). "Thus, a medical opinion is unpersuasive if it is *either* unsupported by, *or* inconsistent with, the record." *Tracy F. v. O'Malley*, 2024 WL 1701572, at *3 (D. Idaho Apr. 19, 2024) (citing *Woods v. Kijakazi*, 32 F.4th 785, 792-93 (9th Cir. 2022)) (emphasis added).

Here, the ALJ found that Dr. Strunk's opinion was not supported by his own treatment notes because the notes "reflect significant improvement in symptoms with treatment and indicate that the overall impact of symptoms on life, work, social, activities, or family was typically 'mild,' and, overall, severity of symptoms were labeled as mild[.]" Tr. 37. Prior to this conclusion, the ALJ discussed Plaintiff's medical examinations with Dr. Strunk from January, March, April, June, August, and October 2023, all of which showed that Plaintiff's depression and anxiety were generally well-controlled with medication. Tr. 35-36. These records further indicated that Plaintiff was sleeping and eating

---

For consistency, "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. § 404.1520c(c)(2).

8

well. Tr. 35-36. This is substantial evidence supporting the ALJ's determination that Dr. Strunk's opinion was not supported by his own examination notes. Therefore, the ALJ did not err in finding Dr. Strunk's opinion unpersuasive.[7]

### 2. Evaluation of Plaintiff's Mental RFC Beginning January 26, 2023

Plaintiff argues that the ALJ erred in finding that he experienced medical improvement of his mental impairments beginning January 26, 2023. Pl.'s Br. (Doc. 7) pp. 5-7. Because the ALJ found that Plaintiff was disabled for the Closed Period, the medical improvement standard applies to his claim of disability after that period. *See Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982).

The medical improvement standard requires the Commissioner to determine whether a claimant has experienced medical improvement subsequent to the ending of the closed period. *Pickett v. Bowen*, 833 F.2d 288 (11th Cir. 1987). Medical improvement is defined as any decrease in the medical severity of the claimant's impairments that were present at the most recent favorable medical decision, based on changes in the symptoms, signs, and/or laboratory findings associated with the claimant's impairments. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i), 416.994(b)(2)(i); 20 C.F.R. §§ 404.1528, 416.928. Under the medical improvement standard, "there can be no termination of benefits unless there is substantial improvement to the point of no disability[.]" *McAulay v. Heckler*, 749

---

[7] Because substantial evidence supports the ALJ's determination that Dr. Strunk's opinion was not supported by his own records, it is not necessary for the Court to address the ALJ's evaluation of the opinion's consistency with other records. *See Tracy F.*, 2024 WL 1701572, at *3 (a medical opinion is unpersuasive if unsupported *or* inconsistent). Nonetheless, Plaintiff concedes that the ALJ addressed the consistency of Dr. Strunk's opinion, albeit "minimally." Pl.'s Br. (Doc. 7) p. 5 ("The ALJ did minimally address the consistency factor[.]").

F.2d 1500 (11th Cir. 1985). "[A] comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement." *Id.*; *see also Whetstone v. Barnhart*, 263 F. Supp. 2d 1318, 1322 (M.D. Ala. 2003) (to revoke benefits, the Commissioner must compare the current evidence with the evidence used to make the initial determination of disability). A court must then determine "whether the [ALJ's] finding of improvement to the point of no disability is supported by substantial evidence." *Id.* at 1322.

In the Closed Period, the ALJ found that Plaintiff had a "marked limitation" in his ability to adapt or manage himself. Tr. 31. In reaching this conclusion, the ALJ noted that the medical evidence during the Closed Period showed "reports of hallucinations, medication side effects such as issues holding hand still and occasionally feeling like [Plaintiff] was falling out of his chairs, tiredness, no motivation, difficulty focusing, poor appetite, depressed mood, oversleeping, some anxiety attacks, easily angered, lack of personal hygiene, limited range of emotion, and limited activities of daily living[.]" Tr. 31. As a result, the ALJ found that Plaintiff would likely miss more than one day of work per month. Tr. 24. And based on the VE's testimony that no jobs would be available with this absenteeism limitation, the ALJ found Plaintiff disabled during the Closed Period. Tr. 32.

After the Closed Period, the ALJ found that Plaintiff had "no more than a moderate limitation" in his ability to adapt or manage himself. Tr. 34. In reaching this conclusion, the ALJ noted medical evidence beginning January 26, 2023, that Plaintiff "has been treated with psychotropic medications" and "his symptoms have been documented as mild

or stable with medications[.]" Tr. 34. The ALJ also noted that Plaintiff's mental impairments have not required emergent or inpatient treatment and that he testified to being able to occasionally shop for groceries, prepare simple meals, and play video games. Tr. 34. As a result of that evidence, the ALJ removed the restriction in Plaintiff's RFC pertaining to absenteeism. Tr. 35. And based on the VE's testimony that jobs would be available without the absenteeism limitation, the ALJ found Plaintiff was not disabled beginning January 26, 2023. Tr. 38.

The specific medical records reference by the ALJ during the Closed Period are as follows:

- December 2021 examination—Plaintiff reported having suicidal ideation on a weekly basis and had poor personal hygiene. Tr. 28-29.

- March 2022 examination —Plaintiff was "in a good mood" and reported adequate rest and an ability to focus, concentrate, and complete tasks. Tr. 30. He denied issues with side effects of his medications. Tr. 30.

- May 2022 examination —Plaintiff reported that he had "pretty much evened out" and had some lows, but nothing like before. Tr. 30.

- July 2022 examination —Plaintiff reported that he was doing well and that his medications were working without side effects. Tr. 29. He also denied suicidal thoughts and reported eating and sleeping well. Tr. 29.

- September 2022 examination —Plaintiff's depression resurged. Tr. 29.

- Beginning of November 2022 examination—Plaintiff reported that he was no longer doing well. Tr. 29.

- End of November 2022 examination—Plaintiff reported medication was working well overall. Tr. 29.

The specific medical records referenced by the ALJ beginning January 26, 2023, are as follows:

- January 2023—Plaintiff reported things were going well and his medications were working. He denied suicidal ideation or medication side effects. Tr. 35.

- March 2023—Plaintiff reported having some bad days but things overall were going well. Tr. 35.

- April 2023—Plaintiff reported being ok other than being upset that his cat passed away. Tr. 35.

- June 2023—Plaintiff stated he was doing ok and his medications were controlling his symptoms pretty well. Plaintiff's depression and ADHD were noted to be stable with his mood only a little low. He reported good sleep and that his overall symptoms had a mild impact on his life. Tr. 35.

- August 2023—Plaintiff continued to report that his symptoms were well-controlled with medication and that he was eating and sleeping well. He also denied suicidal ideation and medication side effects. Tr. 35.

Plaintiff's medical records support the ALJ's finding that Plaintiff experienced medical improvement beginning January 26, 2023, regarding his ability to adapt and manage himself. As noted by the ALJ, Plaintiff's medical records during the Closed Period show that he had hallucinations, suicidal ideation, poor hygiene, medication side effects, and depression. Tr. 27. And although those records show that Plaintiff's symptoms improved at times during the Closed Period, the records also show Plaintiff relapsed, Tr. 29, as is typical with the waxing and waning of mental conditions.[8]

---

[8] *See, e.g.*, *Powell v. O'Malley*, 2024 WL 3416602, at *5 n.4 (N.D. Fla. June 26, 2024) (noting that "mental health symptoms wax and wane, and that unremarkable mental examination findings on a specific day are not representative of [a claimant's] overall mental health status").

In contrast, the medical records cited by the ALJ to find that Plaintiff was not disabled beginning January 26, 2023, lack reports of hallucinations, suicidal ideation, poor hygiene, and medication side effects. Instead, the records show that Plaintiff consistently reported that his mental impairments were controlled and that he was doing well. And while Plaintiff reported some sadness associated with the death of his cat, his overall symptoms were noted to have only a mild impact on his life.

In sum, the medical evidence discussed by the ALJ during the Closed Period compared with the medical evidence discussed beginning January 26, 2023, show that Plaintiff's mental impairments medically improved to the point that he was no longer disabled. Therefore, the Court finds that substantial evidence supports the ALJ's decision to award benefits only during the Closed Period.

**B. Whether the ALJ failed to properly evaluate Plaintiff's subjective statements.**

Plaintiff argues that the ALJ erred in evaluating his subjective complaints of his mental impairments. Pl.'s Br. (Doc. 7) pp. 8-13. The ALJ provided a lengthy recitation of Plaintiff's testimony, including statements that he was suicidal, unmotivated, experienced difficulty waking up, had mood fluctuations and instability, and thoughts of panic. Tr. 25-26; 55-61. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, and that his subjective complaints were generally consistent with the Closed Period evidence. Tr. 29. However, after finding that Plaintiff experienced medical improvement, the ALJ crafted a second RFC. Tr. 34-37. Under the new RFC, the ALJ determined that Plaintiff's medically determinable

13

impairments could reasonably be expected to cause his alleged symptoms but that his subjective complaints were only partially consistent with the record evidence beginning January 26, 2023. Tr. 36

In support of the latter finding, the ALJ discussed multiple medical records beginning January 26, 2023, showing that Plaintiff's depression and anxiety were well-controlled by medication. Tr. 35-37 (noting reports from January, April, June, and August 2023 where Plaintiff reported doing well or ok and that his medications were working well). Those records also indicated that Plaintiff was eating and sleeping well and that he had not been hospitalized for his mental conditions. Tr. 35-37. Additionally, the ALJ considered other evidence—including Plaintiff's daily activities—to discount his symptom testimony after the Closed Period. For example, the ALJ noted that Plaintiff described daily activities including shopping for groceries, living alone, caring for his personal needs, preparing simple meals, and playing computer games. Tr. 37, 55-61.

The Court finds that this is substantial evidence supporting the ALJ's determination that Plaintiff's subjective testimony was inconsistent with the record evidence beginning January 26, 2023. To the extent that Plaintiff has cited evidence supporting his symptom testimony, the Court cannot reweigh that evidence to reach a different outcome. *See, e.g.*, *Mitchell*, 771 F.3d at 782 ("credibility determinations are the province of the ALJ, and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence").

### C. Whether the ALJ relied on a flawed hypothetical question to the VE.

Plaintiff argues that the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence, and pace in the RFC. Pl.'s Br. (Doc. 7) pp. 13-14. While the ALJ limited Plaintiff to "simple, routine tasks with only occasional changes in the work setting or duties," Plaintiff asserts that the ALJ "failed to include any limitations in the accepted hypothetical to the VE regarding [Plaintiff's] ability to concentrate over a period of time, persist at tasks, nor maintain a particular work pace of the course of a workday or workweek." *Id*. at 14. Plaintiff therefore contends that the ALJ's hypothetical is insufficient under Eleventh Circuit precedent to account for his limitation in the area of concentration, persistence, and pace. *Id*.; Tr. 23, 34.

To begin, the Eleventh Circuit has held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the RFC to simple, routine tasks or unskilled work. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2021). However, limiting a claimant to unskilled work can accommodate moderate limitations in concentration, persistence, and pace "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work" despite limitation in this area. *Id*. As a result, courts within the Circuit have found that an ALJ can sufficiently account for "a moderate limitation in concentration, persistence and pace . . . by posing a hypothetical to a VE that limits an individual to simple, unskilled work (or something similar) when the medical evidence demonstrates an ability to perform such

15

work." *Sullivan v. Kijakazi*, 2023 WL 1433437, at *4 (M.D. Fla. Feb. 1, 2023) (collecting Eleventh Circuit cases holding the same).

Here, the medical evidence indicates that Plaintiff can engage in simple, routine tasks despite his limitation in concentration, persistence, and pace. Indeed, despite his mental impairments, the record evidence shows that Plaintiff demonstrated logical thought content, fair insight, good memory, and fair attention span/concentration, due in part to his medications. Plaintiff's daily activities—including shopping for groceries, caring for his personal needs, preparing meals, and playing video games—also show that he can perform simple, routine tasks despite his limitation in concentration, persistence, and pace. Therefore, the ALJ's decision to limit Plaintiff's RFC to simple, routine tasks sufficiently accounted for his moderate limitation in concentration, persistence, and pace. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017). As such, the ALJ did not err.

## V. CONCLUSION

As explained above, the undersigned finds the ALJ did not commit reversible error, and that substantial evidence supports the Commissioner's decision. Therefore, the decision is AFFIRMED. A separate judgment will issue.

DONE this 11th day of August, 2025.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE